**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| CARLA BEEN,<br>*individually and on behalf of*<br>*all others similarly situated,*<br><br>**Plaintiffs,**<br><br>v.<br><br>**EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; EDGEWELL PERSONAL CARE LLC,** *and*<br><br>**DOES 1 through 10,**<br><br>**Defendants.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION PETITION**

Plaintiff Carla Been, individually and on behalf of all others similarly situated, hereby files this, her Class Action Petition, against Defendants Edgewell Personal Care Company; Edgewell Personal Care Brands, LLC; Edgewell Personal Care LLC and DOES 1 through 10 (collectively "Defendants") for their gender-discriminatory pricing scheme which constitutes an illegal, "unfair practice" in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I.    INTRODUCTION

1. This lawsuit addresses a particularly pernicious example of the so-called "Pink Tax," the price difference for female-specific products or services compared with those offered to men. Study after study has found that, women, on a systematic and wide-spread basis, are charged more than men for what are essentially the exact same products or services.[1] This gender-based price discrimination is indisputably harmful to women, adding another layer to the wage inequality that women face, ultimately

---

[1] *See, e.g.,* "From Cradle to Cane: The Cost of Being a Female Consumer, A Study of Gender Pricing in New York City," New York City Department of Consumer Affairs, 2015.

making it harder for women to make ends meet.[2] In fact, over twenty years ago, in 1994, the State of California estimated that the average woman is charged an extra $1,351.00 per year, simply for being a woman; those numbers have only increased over the last two decades.

2.  Gender discrimination in pricing has become such a scourge affecting female consumers that governments in multiple areas of the country have specifically outlawed the practice, including those in New York, Miami-Dade County, Florida, and California. In addition, in April of 2019, two members of the United States Congress introduced H.R. 2048, the *Pink Tax Repeal Act,* a bipartisan bill aimed at eliminating gender-based discrimination in pricing. The bill's sponsor pointed out that "[t]he pink tax is not a one-time injustice. It's an insidious form of institutionalized discrimination that affects women across the country from the cradle to the grave."[3]

3.  To be sure, not every instance of gender discrimination in pricing is unjustified; in certain circumstances, there may exist very real, material differences in products or services that legitimately account for such pricing variances. However, for every "justified" instance of gender-discrimination in pricing, there are scores more instances where the practice is unjustified and completely unfair. This lawsuit concerns a particularly pernicious and predatory example of unfair gender discrimination in pricing: the pricing of a *nearly identical* female-marketed product at a substantially higher price than its male-marketed counterpart. This practice is unjustified and, by all measures, unfair.

4.  In many cases, including in this one, gender-discriminatory pricing is not only unfair, but it also is deceptive, and the deceptive nature of the practice compounds and increases its unfairness. The average consumer, for instance, is largely unaware that nearly-identical products marketed to the

---

[2] As just one of multiple examples, the United States Bureau of Labor Statistics recently reported that women's median earnings were 83 percent of those of male full-time wage and salary workers. *See* "Highlights of women's earnings in 2014." BLS Reports, Report #1058, November 2015.

[3] *See* "Reps Speier & Reed Reintroduce Pink Tax Repeal Act to End Gender-Based Pricing Discrimination," April 3, 2019 Press Release, available at: https://speier.house.gov/media-center/press-releases/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

opposite sex are substantially cheaper, especially when products are differentiated in size and packaging style and often located in different parts of a store. Despite the fact that, technically, men and women are able to purchase a product marketed to the opposite sex, that alternative is even more unfair due to social conditioning and societal expectations regarding what is "feminine" versus "masculine." Just as it would be unfair for men to have to purchase and use pink-colored razors to get a better price, it is unfair for women to have to, for instance, "smell like a man" to get a better price on their deodorant or aftershave. In short, grossly overcharging women for nearly-identical products is an unavoidably unfair practice.

5. Fortunately for women living in Missouri, they are protected by the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), which specifically outlaws such "unfair practices." By bringing this lawsuit, Plaintiff Carla Been aims not only to protect and to compensate all Missouri women victimized by Defendants in this manner, but also to punish and make an example of Defendants for their long-standing, insidious and predatory gender discrimination through the institution of punitive damages.

## II.     PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Carla Been is a citizen and resident of St. Louis County, Missouri.

7. Plaintiff brings this Class Action Petition individually and on behalf of a putative class of all Missouri residents.

8. Defendant Edgewell Personal Care Company is a domestic corporation with its headquarters and principal place of business located in St. Louis, Missouri. Edgewell Personal Care Company is licensed to and does conduct business throughout the United States, including in Missouri. Edgewell Personal Care Company owns the "Schick" brand and manufactures, markets and sells personal care products, including the Product (as hereinafter defined), to its co-Defendants herein, and directly to consumers in Missouri and across the United States. Edgewell Personal Care Company may

be served at: CT Corporation System, 120 S. Central Ave., Clayton, MO 63015.

9. Defendant Edgewell Personal Care Brands, LLC is a Delaware Limited Liability Corporation with its headquarters in Shelton, Connecticut. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company. Edgewell Personal Care Brands, LLC may be served at: CT Corporation System, 67 Burnside Ave., East Hartford, CT 06108-3408.

10. Defendant Edgewell Personal Care, LLC is a Delaware Limited Liability Corporation with its headquarters in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company. Edgewell Personal Care Company may be served at: CT Corporation System, 67 Burnside Ave., East Hartford, CT 06108-3408.

11. At all relevant times, each and every "Edgewell" defendant was acting as an agent and/or employee of each of the other "Edgewell" Defendants, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other "Edgewell" Defendants. On information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other "Edgewell" Defendants. All three "Edgewell" Defendants will be referred to collectively, hereinafter, as "Edgewell."

12. Edgewell is the manufacturer and distributor of the product at issue, and therefore controls pricing of the product and is thus responsible for the conduct complained of herein. Edgewell sells the Product directly to consumers via Edgewell's Schick-branded website, www.schick.com. Further, because Edgewell has created a gender-discriminatory price disparity between the Product, a female-targeted personal care item, and materially-identical male-targeted items, Edgewell's "unfair practice" affects every sale of the Product throughout Missouri. In other words, because, upon information and belief, all Missouri retailers are forced, via Edgewell's "manufacturer's suggested retail

4

price" ("MSRP"), to price the Product in a gender-discriminatory fashion, Edgewell is responsible and liable under the MMPA for *all* sales of the Product in Missouri to Missouri residents.

13. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

14. Venue is proper in the Circuit Court of St. Louis County, Missouri, because the Plaintiff resides here, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this venue.

15. This forum also is superior in convenience to any other, as all of the Plaintiffs are or were Missouri citizens and are located in Missouri, and the acts complained of violated Missouri law.

16. This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

17. <u>Class definition</u>: Plaintiff Carla Been brings this action on behalf of herself and a class of similarly-situated persons preliminarily-[4] defined as follows: All persons, who, within the Class Period, purchased "Schick"-brand "Quattro For Women" Disposable Razor Refill Blades, "Sensitive" or

---

[4] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.

"Regular" (the "Product")[5] in the State of Missouri. The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

18. <u>Numerosity</u>: Upon information and belief, the Class includes tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are readily ascertainable from Defendants' records.

19. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, employing an "unfair practice" under the MMPA, using gender-discriminatory pricing in offering and selling the Product to Plaintiffs.

20. <u>Adequacy</u>: Plaintiff Carla Been is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent and experienced counsel, and she intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and her counsel.

---

[5] As that term and label is defined in greater detail *infra*.

Electronically Filed - St Louis County - July 09, 2019 - 09:19 PM

21. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendants' gender discriminatory pricing is an "unfair practice" pursuant to the MMPA; (b) whether and to what extent the Class members were injured by Defendants' illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to punitive damages; (e) whether the Class members are entitled to declaratory relief; and (f) whether the Class members are entitled to injunctive relief.

22. <u>Superiority</u>: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct. Thus, it would be extremely difficult for the individual Class members to obtain effective relief. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

### III.  BACKGROUND

23. Defendants manufacture, distribute, and sell the product at issue herein, "Schick"-brand "Quattro For Women" 4-Blade Women's Disposable Razor Refill Blades, "Sensitive" or "Regular."

24. Defendant Edgewell owns the "Schick" brand and, under that brand name, manufactures and distributes, *inter alia,* the "Schick"-brand "Quattro For Women" 4-Blade Women's Disposable Razor" (hereinafter "Quattro W").

25. The Quattro W, along with the Product, the Refill Razors for the Quattro W (either "Regular" or "Sensitive"), are marketed towards females, having more-"feminine" packaging and design, being expressly "for women" as marketed, and generally being grouped by retailers in the

Electronically Filed - St Louis County - July 09, 2019 - 09:19 PM

"women's" section of their personal care products.

26.     The Quattro W is a women's razor having a razor head with four blades, placed parallel to each other and housed in plastic and metal, appearing as follows ("Sensitive" shown):[6]





a.



b.

27.     The Quattro W is manufactured so that once a user has used it enough times that the blades become relatively duller, the user can remove the head and replace it with another; thus, while the entire Razor is not disposable, because the razor head can be replaced, Schick markets the Quattro W as being "disposable."

28.     The Refill Razors for the Quattro W are relatively flat, containing four blades, placed parallel to each other and housed in a plastic and metal razor head bordered with "skin guards".  The Refill Razors come in two varieties: "Regular" and "Sensitive."

29.     The "Regular" Refill Razors are housed in dark-pink-tinted plastic; below the razors there is a strip that Schick claims is a "conditioning strip formulated with aloe and Vitamin E."[7]

---

[6] https://www.schick.com/us/en/women/hydro-silk/hydro-silk®-razor/p/Hydro-Silk-Base-Razor

[7] https://www.schick.com/us/en/women/razor-and-blades/refillable-razors/quattro-for-women®-

30. The Quattro W "Regular" Refill Razors appear as follows:



    a.

31. The "Sensitive" Refill Razors are largely identical to the "Regular" Refill Razors except that the four blades are housed in light-green-tinted plastic; below the razors there is a strip that Schick claims is a "conditioning strip formulated with aloe and Vitamin E."[8]

32. The Quattro W "Sensitive Care" Refill Razors appear as follows:



    a.

33. The Refill Razors – both "Regular" and "Sensitive" – are substantially similar to each other and are sold through all outlets, including through Schick directly, at the exact same price.

34. The Refill Razors are sold to consumers in packages containing various numbers of Refill Razors, either the "Regular" or the "Sensitive" Refill Razors. Because they are substantially similar and sold through all retailers, including through Schick directly, at the exact same price, it is appropriate to treat both varieties collectively; thus, for purposes of this lawsuit and within this Petition, "Schick"-brand "Quattro for Women" 4-Blade Women's Disposable Razor Refill Blades, "Sensitive" or "Regular", will be referred to hereinafter as the "Product."[9]

---

razor/p/QFW-Razor-Base

[8] https://www.schick.com/us/en/women/razor-and-blades/refills/quattro-for-women®-sensitive-refills/p/QFW-SensitiveRef

[9] The "Product" includes the Razor Refill blades regardless of how they are packaged and sold by other retailers; for instance, the "Product" includes Razor Refill blades sold in, *inter alia,* 4-count, 6-count, 8-count and higher-quantity packages.

35. The Product, packaged for sale by various retailers, appears as follows (6-count package shown merely as an example):



a.

36. Edgewell sells the Product directly to consumers through its online website, www.schick.com at a price of $12.99 for four razor Refills. Thus, Edgewell sells the Product for $3.25 per Refill.

37. In addition to the Quattro W, Schick manufactures, markets, distributes, and sells a male-directed Razor that is substantially similar to the Quattro W, called the "Quattro Titanium."

38. The Quattro Titanium ("Quattro T"), along with Refill Razors for the Quattro T, are marketed towards men, having more-"masculine" packaging and design, being expressly "for men" as marketed, and generally being grouped by co-Defendants in the "men's" section of their personal care products.

39. The Quattro T is a men's razor, like the Quattro W, having a razor head with four blades, placed parallel to each other and housed in plastic and metal, appearing as follows:[10]

---

[10] https://www.schick.com/us/en/men/razor-and-blades/refillable-razors/quattro®-titanium-razor/p/QFM-Ti-Razor

10

a.   

40. The Quattro T, like the Quattro W, is manufactured so that once a user has used it enough times that the blades become relatively duller, the user can remove the head and replace it with another; thus, while the entire razor is not disposable, because the razor head can be replaced, Schick markets the Quattro T as being "disposable."

41. The Refill Razors for the Quattro T, like those for the Quattro W, are relatively flat, containing four blades, placed parallel to each other and housed in a plastic razor head bordered with "skin guards".

42. As additional features, relative to the Product, the Quattro T Refill Razors features an "edging blade" for "hard to reach areas" – an extra blade placed at the very top of the razor head.

43. The Quattro T Refill Razors are housed in grey-tinted plastic, with an aluminum siding; below the razors is a slightly-rubberized "guard bar" and above the razors is a "lubricating strip," according to Schick, for "glide across your skin, with aloe and Vitamin E."

44. The Quattro T Refill Razors appear as follows:



a.

45. The Quattro T Refill Razors, like the Product, are sold to consumers in packages containing various numbers of refill razors. The Quattro T Refill Packages as offered by retailers

appears as follows (8-count package shown just as an example):



a.

46. As shown *supra,* the Product and the Quattro T Refill Razors are substantially similar in multiple respects: both are manufactured by Defendant and marketed under the "Schick" brand; both contain 4 razors, presumably manufactured using the same material and process, laid parallel in a relatively-similarly sized plastic and metal housing; both contain lubricant/hydration mechanisms to hydrate and lubricate a user's skin; both attach to their respective razor handles in roughly the same manner.

47. If anything, to the extent there is a variance between the Product and the Quattro T Refill Razors, the Quattro T Refill Razors are superior: the Quattro T Refill Razors contain an additional-blade "edge trimmer" built into the very top of the razor head, that allows the Quattro T to be used for precision trimming.

48. Stated differently, the Refill Razors are nearly identical; yet to the extent they are not, the Quattro T Refill Razors are superior, containing a greater number of features, made with a greater variety of materials and more razors, pursuant to what is undoubtedly a more-difficult, more-complex manufacturing process.

49. In short, in terms of design, materials involved, and manufacturing processes, Schick's male-marketed Quattro T refill razors are, at the least, equal to, if not superior to, the female-marketed Product.

50. Consequently, a consumer would expect the Quattro T refill razors to be sold at an equal

and/or greater price than the Product.

51.	However, on the contrary, due to the Defendants' gender-discriminatory pricing scheme, both on Schick's online website, www.schick.com, and across the entirety of the Missouri marketplace, the Product is priced significantly more-expensive than the Quattro T refill razors.

52.	On Schick's website, the Quattro T refill razors are priced at just $11.49 for a package of four razor refills.  Thus, Edgewell sells the Quattro T refills for $2.87 per Refill.  Comparatively, the Product, at $3.25 per refill, costs 13% more.

53.	In other words, Defendants herein charge their customers substantially more for the "women's version" of essentially the exact same, if not an inferior, product.

54.	Because Defendants control the pricing of the Product, upon information and belief, by establishing MSRP's that all Missouri-based retailers are bound to adhere to, the gender-discriminatory pricing disparity created by Defendants, the "unfair practice" for which Defendants are responsible, affects *every* sale of the Product, regardless how the Product is packaged and regardless of the retailer selling directly to Plaintiff class.  In short, Edgewell is liable for its "unfair practice" in relation to all consumer purchases of the Product in the State of Missouri.

55.	There are few better examples of the gender discriminatory and *unfair* "Pink Tax" than in Defendants' sale of the Product to Missouri consumers.

56.	Due to Defendants' unfair practice, women consumers are being charged significantly more than men for essentially the exact same, if not an inferior, product.

57.	For the multiple reasons set forth above and below, Defendants' pricing and selling of the Product constitutes an "unfair practice" that is illegal and prohibited under the MMPA.

*Facts Particular to Carla Been and Representative of the Proposed Class*

58.	In or around July of 2019, Plaintiff purchased the Product directly from Schick, via Schick's online website, www.Schick.com, paying $12.99 for four refills, or $3.25 per Refill.

59. At the same time, upon information and belief, the Quattro T refills were priced at just $2.87 per refill.

60. On information and belief, the above-noted gender-discriminatory pricing differential exists consistently across all retail outlets in Missouri; all outlets sell the Quattro T refills for a cheaper price than the Product, regardless of how either is packaged.

61. When Plaintiff purchased the Product from Defendants, as set forth above, she was injured by Defendants' unfair practice of employing a gender-discriminatory pricing scheme, both directly and indirectly.

62. There is no legitimate or material difference in the labor, ingredients and/or related costs of production underlying Defendants' gender-discriminatory pricing schemes to justify the significant price disparity between the Product and the materially-identical-if-not-superior Quattro T razor refills.

63. The terms of the MMPA, particularly the term "unfair practice," must be liberally construed to protect consumers.[11]

64. The 2019 version of the Merriam-Webster dictionary provides, as one definition of "unfair," something that is "not equitable in business dealings." "Equitable" is defined as "dealing fairly and equally with all concerned." Obviously, Defendants' gender-discriminatory pricing schemes do not deal "equally" with purchasers of female-oriented products who are required to pay substantially more than purchasers of the male-oriented version of essentially the exact same product.

65. Moreover, a Missouri regulation, 15 Mo. C.S.R. § 60–8.020, draws its authority from, and was promulgated to enforce, the MMPA; Section 60-8.020 provides that an "unfair practice" is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by the Constitution, statutes or common law of [Missouri] … or … is unethical, oppressive or unscrupulous."

---

[11] According to the Supreme Court of Missouri, "[t]he literal words [of the MMPA] cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co. Inc. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. 2001).

Electronically Filed - St Louis County - July 09, 2019 - 09:19 PM

66. Defendants' arbitrary and discriminatory pricing scheme is both "unethical" and "unscrupulous," and is "oppressive" to women; indeed, it is almost *universally* accepted that practices such as Defendants' are "unfair."[12]

67. In addition, Defendants' gender-discriminatory pricing schemes offend the same Missouri public policies underlying Missouri's express prohibitions against gender discrimination in multiple other areas, policies protecting the fact that all Missouri citizens are entitled to full and equal accommodations, advantages, facilities, privileges, and/or services regardless of factors like sex and/or race.

68. For example, the Missouri Human Rights Act ("MHRA"), R.S. Mo. § 213.065(1) provides, generally, that "all persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment of any place of public accommodation [which includes retail stores] … without discrimination … on the grounds of, [*inter alia*] … sex."

69. The MHRA further provides that "[i]t is an unlawful discriminatory practice for any person, directly or *indirectly,* to … withhold from or deny any other person … *any* of the … advantages … services … or privileges made available in any place of public accommodation … on the grounds of, [*inter alia*] … sex." R.S. Mo. § 213.065(1)(emphasis added).

70. Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the MHRA, the pricing schemes clearly offend some of the same public

---

[12] As just a few examples of the overwhelming consensus that such practices are unfair, supporters of the federal *Pink Tax Repeal Act* stated, *inter alia,* as follows: "It's time for these unfair practices to end." – Emily Martin, Vice President for Education & Workplace Justice at the National Women's Law Center; "There is no reason why men and women should pay different prices for essentially the same products or services; [t]his unfair practice should be stopped. The *Pink Tax Repeal Act* is a critical step in thwarting this unfair practice." – Susan Grant, Director of Consumer Protection and Privacy at Consumer Federation of America; "For products and services that do not differ in the labor, materials and related costs of production, it is unfair to charge more based on the gender of the consumer to whom it is marketed." – Richard Holober, Executive Director of the Consumer Federation of California. *Available at*: https://speier.house.gov/media-center/press-releases/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

policies underlying the MHRA – particularly that consumers should be free from discrimination based on factors such as race and gender.

71. In addition, 15 C.S.R. § 60–8.020 further provides that an "unfair practice" under the MMPA is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by … the Federal Trade Commission, or its interpretive decisions…"

72. The Federal Trade Commission ("FTC") has enforcement or administrative responsibilities under multiple laws, including the Federal Trade Commission Act and the Clayton Act.

73. The Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13, provides, *inter alia,* that it "shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality …"

74. Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the Robinson-Patman Act, the pricing schemes clearly offend some of the same public policies underlying that Act – particularly that consumers should be free from pricing discrimination based on factors such as race and gender.

75. Likewise, the Federal Trade Commission enforces the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (the "ECOA").

76. The ECOA, *inter alia,* makes it unlawful for a creditor to discriminate against any individual on the basis of age, race, color, religion, sex or marital status.

77. Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the ECOA, the pricing schemes clearly offend some of the same public policies underlying the ECOA – particularly that individuals should be free from discrimination based on factors such as race and gender.

78. Thus, for several reasons, it is clear that Defendants' gender-discriminatory pricing

schemes also "offend[] any public policy as it has been established … by the [FTC]." *See* 15 C.S.R. § 60–8.020.

79. As such, for at least the multiple, independent reasons set forth *supra*, Defendants' gender-discriminatory pricing schemes constitute "unfair practice(s)" prohibited by the MMPA.

80. In short, under Missouri law, Defendants' gender-discriminatory pricing is illegal.

### IV.     CAUSE OF ACTION AGAINST DEFENDANTS

**COUNT ONE: VIOLATION OF THE MMPA – "Unfair Practice" -- Discriminatory Pricing**

81. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

82. The Defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), by employing gender-discriminatory pricing schemes in charging substantially more for a female-marketed version of a materially-identical-if-not-inferior product than Defendants charge for the corresponding male-marketed version.

83. For at least the multiple, independent reasons set forth *supra*, Defendants' gender-discriminatory pricing schemes constitute "unfair practice(s)" pursuant to the MMPA, and thus are illegal under Missouri law.

84. As set forth above, Defendants engaged in such "unfair practices" in transactions with Plaintiff and the Class in Missouri which were intended to result in, and did result in, the sale of the Product, "merchandise" under the MMPA.

85. Pursuant to Defendants' numerous violations of the MMPA, Plaintiffs were damaged, suffering ascertainable losses, pursuant to the strict terms of the MMPA, in the full amount of the Product Plaintiffs paid to Defendants and/or Missouri-located retailers.

86. Due to Defendants' illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

87. In addition, Defendants' conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

88. Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

**COUNT TWO: INJUNCTIVE RELIEF**

89. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

90. Defendants continue to retain payment made by Plaintiffs and other members of the Class for the Product that is the result of Defendants' unfair practices in violation of the MMPA.

91. Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendants' continued violation of the law by continuing to charge substantially more for a female-marketed version of a materially-identical product than Defendants charge for the corresponding male-marketed version.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a class action and appointing Plaintiff Carla Been as class representative and her counsel as class counsel. Plaintiff requests that this court find that the Defendants violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

Electronically Filed - St Louis County - July 09, 2019 - 09:19 PM